Good morning, counsel. We're here for argument in Atwood v. Shinn, No. 22-70084. And you may proceed. Good morning, Your Honors. And good morning, opposing counsel Amy Knight for Frank Atwood. Justice Gorsuch wrote in a recent concurrence, who wouldn't hold a rightly diminished view of our courts if we allowed individuals to linger longer in prison than the law requires only because we were unwilling to correct our own obvious mistakes. Frank Atwood did not commit this murder. And there is no legally valid finding of any aggravating factor that would make him eligible for the death penalty. Can I ask you this since, do you agree that for an order to issue authorizing the filing of a successive petition, it must meet the criteria of 28 U.S.C. Section 2244 B.2.B. And if not, why not? I have two answers to that. One is the ultimate determination of whether the petition satisfies B.2.B. is to be made by the district court. This court is just to screen whether there is an ability down the road to make that showing. So it does not have to be established in order for this court to authorize. What we need to do here, as I understand it, is we need to determine whether there's a prima facie case made out that, and if so, it would go to the district court. But if not, we would deny it. But in making the determination of whether there is a prima facie case, we're looking at 2244 B. Correct? That is correct. And we do understand that for one of the claims that the face of 2244 B. does not discuss that particular sort of claim being authorized. It does for the other two. The Brady claim? Right. The Brady claim would be analyzed under the statute itself, as well as the freestanding innocence claim and the requirements in particular of establishing sufficient innocence and sufficient diligence. And those are discussed in the papers. And regardless of whether 2244 B. can be applied to the third claim, the aggravated claim, those are under the statute. Well, you use the word freestanding innocence. And I noticed in your filing, you just gave one page to that, your freestanding innocence. It's almost like, I don't want to say a throwaway argument, but I think it's like 85 pages. And you do one page to that, almost like at the ending. And then you're leading with that he's innocent because he's of the conviction. So I saw the district court's previous ruling of saying you couldn't make a freestanding innocence claim, and there were certain things considered along those lines. So I'm perhaps, but now you're leading with freestanding innocence. So you have to get in the door. And if the equitable exception gets you in the door, then the question is, can you pull in Brady? But you really don't develop much of a freestanding innocence claim in your documents. The substantive freestanding innocence claim itself, I think it's very tightly tied to and very strongly overlapping with the Brady claim. And the Brady claim is a more well-recognized claim. And we believe that we have established a Brady violation, in which case all of the evidence of innocence that we have gathered would establish both the gateway to get the Brady claim in and the necessary materiality for Brady. For the freestanding innocence, you need to have new evidence. And therefore, you would need to convince us on the Brady claim that that would be the new evidence, is that? And so if the Brady claim fails, does the freestanding evidence fail? If the Brady claim fails for reasons of diligence, then likely the freestanding evidence claim would also fail because the basis for the assertion that we had diligently brought the freestanding innocence claim is that the new innocence evidence... You have to have new evidence, right, for the freestanding. Right, right. The new evidence here would be the Brady claim, right? Am I wrong? Or is there any other new evidence? There is new evidence that has not been presented before that was discovered sort of in between. So it may not, without the Brady evidence, there is nothing to suggest diligence for us now. The Brady evidence that we have read in conjunction with things that we had developed in the interim that were not enough to bring an innocence claim, but we had continued to investigate in combination, that is all new evidence that would be considered in the freestanding innocence claim. I want to shift your attention, if I could, to the Sawyer argument. And I understand that a different version of it, in your view, was made early on, on the aggravating factor. And as I understand it, that's kind of a sequencing argument of when the aggravator is applied, was it at the time of California conviction, or was it time of Arizona? And the Arizona Supreme Court has ruled on that. But then, assuming it's a new argument, this new argument that the aggravator doesn't apply because it doesn't match, it appears that was presented in the Arizona state courts. And maybe you can illuminate that for me, because it seemed to have gone to a trial court and the Supreme Court, but I'm not seeing the records of that. It was presented to the state court in a post-conviction proceeding in 2019. And we did attach the ruling denying that to our application. It was procedurally barred on grounds that we find to be not sufficient, not adequate, if you would. Did the merits say that the state Supreme Court implicitly rejected that claim? That is what was argued and what the trial court said. However, that is not a tenable reading of Arizona law, and it would not constitute an adequate procedural bar for purposes of federal review, because it leads to the result. If anything that is not presented in a capital appeal was considered to have been implicitly considered and rejected simply because of the generalized review that is done in those cases, there would be no such thing as an unexhausted claim. I was curious about how we could rule on a question of state law that's been ruled on by the state courts, including the Arizona Supreme Court denied review of this, and how that would arise under our NFA. The Arizona Supreme Court denied review so that it never ruled on the case at all. It simply did not accept jurisdiction. So there is no Arizona Supreme Court decision on this 2019 petition raising this issue. So it's ruling on procedural grounds. Is that clear from the denial? If denied, it doesn't say what the basis is. It's what some people call a postcard denial, but I'm still trying to understand where we come into the procedure, given that it was, you disagree with this, but how does that then permit us to review that claim? It was not decided on the merits in the state court. And then our position is it is a Furman-Gregg narrowing being applied to it. What we're saying though, under normal NFA review, we would say, was this an unreasonable application of Furman and Gregg for the Arizona state court to say, oh, the Arizona Supreme Court correctly applied Arizona law to say that the California conviction qualified as an error. Essentially, that's what the underlying issue is. And we certainly under normal NFA review, we couldn't say that that was an unreasonable application of Supreme Court precedent. But the state courts stated reasons for denying the petition were that it was procedurally barred under Arizona rule 32.2. And it also went on to say that it was impliedly considered and rejected. And that was said in the context of saying that it is procedurally barred under Arizona rule of procedure 32.2 A3, which says that the post-conviction petition cannot consider something that's already been considered. So in both cases, it was asserting a procedural bar. It has not been determined on the merits in state court. Previously, even before that, the Arizona courts said that it didn't violate Furman and Gregg. It wasn't your exact challenge that you're making here, but it was challenged and they said it didn't. So then you get bootstrapped, you know, then you get bootstrapped. They're saying, well, why didn't you bring that the other one up before when you were challenging the conviction? There's no dispute that it should have been brought up before. Okay. But then, all right. I, you know, I'm not trying to be difficult. Well, I guess maybe that maybe to cut to the chase, if I understand that you believe it's a different claim because of the substantive nature of it, and you believe it hasn't been So now we're here. What is the basis for us? And just to be clear, this is what we're, I guess we're calling the Sawyer claim, correct? Yes. What procedural basis do we use to be able to consider your Sawyer claim? What's the foundation? It is that the Sawyer exception was not eliminated by AEDPA and nor for Mr. Atwood's case, was it subsumed into 2244B, the way that this court has treated some claims in the Thompson case. The reason it was not eliminated is because the statute is silent on those and there was pre-existing equitable exception. And in other contexts, the court has held that equitable exceptions that existed before AEDPA, unless they are addressed clearly in the text of AEDPA, could continue. This one was not addressed. Thompson is saying that 2244B consumes Sawyer and the innocence of the penalty. How do you distinguish that? Thompson was a California case and part of a large part of the basis for its decision was that the aggravator was alleged in the indictment and decided at the same time, and therefore it was considered part of the underlying crime of conviction. That is not the case for Mr. Atwood. Mr. Atwood was convicted of murder. Only after that conviction was there any assertion of an aggravating factor or any finding of an aggravating factor. The aggravating factor for Mr. Atwood was not part of his underlying criminal conviction. That has since changed in Arizona. So we wouldn't have that problem in a case today. And that now Arizona requires advance notice of aggravating factors. Thompson's interpretation of 2244B is including the offense being innocence of capital murder doesn't apply in your case. Is that what you're saying? That is what I'm saying. And it is perfectly valid analysis in a case that happens under California law or that would probably happen under Arizona law today. Most cases, it's just that its analysis depends on something that did not happen in Mr. Atwood's case. So Mr. Atwood's case cannot be placed under counseling. Let me also ask you this, which I was puzzling over. So our authority is limited to determining that the application showing that the application satisfies the requirements of Section 2244B, this subsection. So if you're saying the application doesn't satisfy the requirements of we're without authority to authorize the filing of a secondary successive application, according to this language of AEDPA, which the Supreme Court just yesterday told us we shouldn't make equitable exceptions to the language of AEDPA. So how would we authorize filing of a secondary successive application when we're not allowed to be 3C? I think you would interpret it as saying that it's not that it doesn't satisfy the requirements. It's that the requirements as to this particular type of claim are different. And in fact, in this case, it's not even the... You have to create an extra statutory exception. You'd have to read in a new exception. You would be maintaining a pre-existing exception. And in fact, in Ramirez, exactly what happened, the court's logic there is there's this pre-existing body of law. In that case, it was about factual development. And then we have a statute imposed. And then the point being made in Ramirez was that these things that predated the statute continued to be the case. Is that a miscarriage of justice? I mean, the thing that predated the statute, is that a miscarriage of justice exception? In Ramirez, it is not. No, no. I mean, in our case. Yes. Yes. It is a miscarriage of justice exception specifically for innocence of the death penalty. And that is Sawyer. And how does that relate to the Schlupp exception? Well, Schlupp made it clear that it was carving itself off as a different thing, innocence of the crime, from innocence of the death penalty, by creating a different standard for that. When we get 2244B, it takes Schlupp and pulls that in. But it leaves Sawyer where it is. Does not address it. Do you have any case that follows that logic, either here or in any other circuit? I have not discovered a case either accepting or rejecting that logic. I know you want to probably save some time for rebuttal. But if I could prevail on the presiding judge to ask another question. Sure. No problem. Okay. On the actual innocence part of it, and Schlupp and all of that. I know it was not in the record at the trial, but it was discussed by the district court that there was an informant that the prosecution attempted to offer that had drawn a map of where the bones were. And also, I think there was something else involved in that. But it did not come in at trial and the court did not, it was a cross appeal on part of the, I think, the prosecutor. But is that something that, so the bones end up basically really close where that is. And that's how the police, there's some indication that's how the police found the bones some months later. If you want to go that somehow pull Schlupp in, is that something we can consider even though it wasn't in the record? What do we do with that? Because that certainly seems on some level fairly damning to actual innocence on the part of your client. The actual innocence assessment is made in examination of all of the evidence together. So that would include new evidence presented by either side and new evidence that was known at trial. So all of those things would be included, all of the evidence together. And I would like to save a short time for rebuttal if I may. I think she's going to give you time. You're going to get time. You'll get time. So I have another question for you. We're really trying to sort out procedurally where your claim fits. And Sawyer said this quote, the miscarriage of justice exception is concerned with actual as compared to legal innocence. So I thought we were dealing here with so-called legal innocence. Can you fill us in on how Sawyer's own limitation fits with your claim? Sure. First, there's two ways that the phrase legal innocence gets used in the cases. One of them is just to say we've got a very, very strong claim of a constitutional procedure violation that is established, but it doesn't actually affect the accuracy of the trial. That sometimes gets called legal innocence. That's not what we have here. The other thing that gets called legal innocence is when someone is innocent because the statute that they're convicted under does not actually cover their conduct that has been established. And that often in which case. So that's what I understand your claim is. But Sawyer says that this miscarriage of justice doesn't relate to the legal innocence. And so wouldn't that say that the Sawyer construct doesn't apply to the second way to look at legal innocence that you just explained? I don't believe so, because I think when Sawyer says that, it's citing cases that talk about things like there was a Crawford violation or there was a Masia violation, not the type of what we're calling legal innocence, which is almost a species of factual innocence, because the fact of the matter is that he's not guilty of the specific crime. And this court actually addressed that question very clearly in a case called Vostyan versus Person. This is 742 F. 3rd, 1131. One way a petitioner can demonstrate actual innocence, and this was for McGuigan purposes of a statute of limitations, is to show in light of subsequent case law that he cannot as a legal matter have committed the alleged crime. He need not demonstrate that he was actually innocent of any criminal wrongdoing. He need only demonstrate that he was actually innocent of compelling prostitution, the counts under which he was convicted. Okay, I understand your point. I just have one more question now. I'm not taking your rebuttal time. So we're kind of going between this actual innocence, factual innocence, legal innocence, all of those things. Now, I understood you to say that if it's an actual innocence claim, that all new evidence and all evidence can be considered. And I want to make sure that I know in the record what that would involve. If you prevail on the Brady, then that would be your new evidence. I didn't see it in the record, but I know that there's been retesting of the bumper. Is there any new evidence in the record on that? I don't believe there is new evidence of the bumper testing in that particular case. There is some other further investigation of Okay, thank you. And one last thing, and if you don't have it off the tip of your tongue or your fingers, can you give us the citation in the record to the trial court and the Supreme Court denial on the, I guess what you're calling the 2019 claim? Thank you. Yes, I believe those are attached right at the end of the... Okay. Tell us what the page number is. Thank you. Ms. Jason, you may proceed. Thank you, Your Honor. Laura Jason, and I represent the respondent in this matter. Excuse me, I'm getting my voice back after having been sick, so I apologize for my voice. I'd like to just start with clarifying that the post-conviction court did rule on the merits of Mr. Atwood's claim that the aggravator was improper and not valid. On pages two and three of the order that Ms. Knight is going to give you the citation for, it found the claim not colorable and expressly said that the court had analyzed the legality of the sentence. So that is a merits ruling. And that's a merits ruling on this variation on the claim. In other words, that the substance of the statute didn't match what you need for an aggravator. Correct. Correct. And the court also, in addition to applying two procedural bars to the claim, also found the claim untimely. So those are a lot of hurdles that Mr. Atwood would need to overcome to present the claim. Your Honor, I don't know if you would like me to address the same issues that Ms. Knight addressed, or if you'd like me to address the issues that your order asked the parties to address. Well, could you start with one thing we might agree on? Do you agree that we have jurisdiction to consider the motion for an order authorizing the filing of a successive petition? You certainly have jurisdiction to determine whether a prima facie case has been made. Is the court referring to the first issue about whether B-1 and B-2 are jurisdictional? Yes. I think the Jones court correctly held that B-1 is jurisdictional. And given that holding, there would be no reason not to find that B-2 is also jurisdictional. It contains the same mandatory language that the Jones court found rendered B-1 mandatory and jurisdictional. If we have jurisdiction under B-3, we have to make a decision, is there a prima facie case? We may decide it doesn't match up to B-1 or B-2. But nothing has stripped us of jurisdiction to determine is there a prima facie case for an SOS, correct? I think that's correct. And if the court finds that the claim does not meet the requirements, then it lacks jurisdiction over the claim. And the district court would lack jurisdiction since we're just deciding whether a district court is authorized or not. I don't really understand exactly how subsection B and B-1 and B-3 work together, but it does appear that B-3 is aimed at a different issue than B-1 and B-2. We don't actually have claims presented to us. We have a motion to authorize a district court to consider claims. Correct. So this court needs to decide whether under B-3 whether Mr. Atwood has made a prima facie showing that the application satisfies the requirements of the subsection. And satisfying the requirements of the subsection, does that apply back to 2244B-2 which sets out the requirements for a claim to be considered? Yes. Well, I mean, it could fall under B-1, but certainly refers to subsection B. So it would authorize the filing of a secondary successive application if it fell under B-1 because that just says the claim shall be dismissed. So it would have to be B-2. Correct. Correct. So the puzzle I had and was asking opposing counsel was, can we say it satisfies the requirements of B-2 even if it doesn't satisfy the requirements of B-2? In other words, it's a extra statutory outside of the statute exception, which is what opposing counsel is arguing for. And opposing counsel says, well, it's historically an exception. So therefore, we don't have to comply with 3C. What's your response to that? Well, I do think the court lacks jurisdiction to authorize a claim that doesn't meet those requirements. So I don't think the court can apply an equitable exception to B-2. What about Schlupp? What if we had a Schlupp claim? Well, the Schlupp deals with actual innocence of the underlying offense. And I think subsection B-2 clearly incorporates that claim. And we held that, right? It's engaged. Right. Correct. That it subsumes the Schlupp exception. And then I thought that in Thompson, we said that 2244B-2 also subsumes actual innocence of capital murder or of actual innocence of the death penalty. But opposing counsel disagrees because because of the, I guess, the underlying, our interpretation of the underlying offense in that case. And here, the aggravator is not part of the underlying offense. Could you respond to that argument? Excuse me. Yeah, I don't see that as a way of distinguishing this case from Thompson. I think on its face, Thompson would apply. If Thompson remains good law after the Ramirez decision yesterday, Thompson would apply to incorporate a death penalty eligibility claim that such as Atwood raises. And it would require Mr. Atwood to comply with the requirements to certify the claim for presentation in a second or successive petition. And so I think Mr. Atwood understandably doesn't want that to apply so that he can ask this court to apply an equitable exception that doesn't force him to comply with the statute's requirements because he admits he death penalty eligibility claim. And in fact, he doesn't rely on any new factual predicate as B-2, B-1 requires, and only presents a new, an alternative legal argument for finding that the aggravator exists, which the state court has disregarded. So the Brady claim, from your perspective, what would the court have to find to actually get to the Brady claim? First of all, the court would have to find that Mr. Atwood had been diligent in obtaining the Brady information. And certainly the state understands its obligation to disclose exculpatory evidence. And it believes it complied with all of those requirements in this case. But the Brady claim doesn't qualify for the equitable exception. No, that would, he would have to, Mr. Atwood. Would you have, would we have to go through the door of finding that the equitable exception and then peek under the covers to pull in the Brady claim? Or if we find that, if it fails at that level, how does the Brady claim get in? I don't understand Mr. Atwood to be arguing that an exception should apply to allow the court to hear the Brady claim. I understand his argument to be that he can satisfy B-2's requirements. And so, so if he can, and he claims that he was diligent in finding the information, but he, he was not because he waited 30 years to, to ask to go through the state's files. So at a minimum, he, he cannot establish the, the diligence requirement to present the claim in a second or successive petition. So how does yesterday's Supreme Court case with Ramirez and Jones, what applicability do you believe it has to our analysis? Or at what point would that come in regarding the arguments that we're hearing today? Well, Ramirez, in Ramirez, the court held that the court, no court can, can apply an equitable exception to EDPA's statutory requirements. So here that would mean that, that no equitable exceptions can apply to B-2's requirements. And that, so, so Mr. Atwood, if he can't meet B-2's requirements, that's it. He cannot present the claim in a second or successive petition. And I think that, and that's why I believe that, that Ramirez may have implications for Thompson as well. And, and may render Thompson's reading of B-2 as including a claim of death penalty and eligibility. I think the court, that's in essence, applying an equitable, Sawyer's equitable exception to the statute. So I think Thompson may need to be reconsidered in light of Ramirez. Let me just ask you, because we go through all these procedural things, but the bottom line here is that Mr. Atwood claims that the elements of his California conviction do not match the Arizona death requirement. And what is your executing someone who is legally innocent under the law? No, the state court found that Mr. Atwood was a prior conviction. Mr. Atwood's prior conviction did satisfy the F-1 aggravator. He now simply posits a new legal test. But that was the sequencing of it, correct? I'm not sure what you mean by that. Well, I mean, the timing of that conviction and, and his trial and conviction in Arizona. You're talking about the first habeas petition where the Supreme Court has the more extensive discussion. And I apologize. I didn't, wasn't, didn't have time to review all those documents, but as I recall, the state court, well, first of all, the Arizona Supreme Court affirmed the sentence and affirmed the finding of the F-1 aggravator. But the specific argument that's currently raised was not directly before the Supreme Court. It wasn't directly before the Supreme Court at the time. That's correct. So how do we know then that the, um, um, qualify at Arizona conviction, you know, that similar Arizona conviction was imposable, I think is the language. Um, how do we know that if this, the argument was not raised to the state? As I recall in, um, in responding to Mr. Atwood's, um, post-conviction petition that raised this claim, the state argued that, uh, in considering the other aggravators, this, the court did apply a same elements test, uh, I believe with the F-2 and the state argued that, that the same element elements test simply didn't apply to the F-1 aggravator. And the post-conviction court ruled on the merits that that was correct. So that goes to the question I had, which is, this is purely a question of state law. How Arizona, um, analyzes the, um, conviction as the opposing counsel calls it, the foreign conviction compared to the Arizona conviction. And, um, is there a case that's directly on point that says how the Arizona court is supposed to analyze it? Not that I'm aware of your honor. Um, and, and correct. It is, it is a question of state law. And, um, Mr. Atwood simply points to other cases in which the Supreme court did apply the same elements test. And obviously, I mean, if this court finds he's presented a, a prima facie case, then the state, you know, we will hash that out in the district court. Um, but at this point he's presenting a purely legal claim that doesn't rely on a new factual predicate. And in fact, he's been aware of the facts underlying the claim for, since the conviction since, since the trial. Um, so at a minimum, he can't meet the diligence requirement because he's been aware of the factual predicate for all these years. And he agrees that the claim was available to him when he filed his initial habeas petition and under gauge gauge requires the court prevents a finding of diligence where a claim was available at the time of the initial petition. And assuming the facts underlying facts were known, which they were here and Mr. Atwood doesn't assert otherwise. So, um, there's no, and Mr. Atwood agrees that he cannot satisfy the requirements of B2 to present this claim in a successive habeas. And so that should end the court's analysis of the claim. Let me ask you this. Um, I think right at the end of the petition, there's one page that claims actual innocence. Um, what should we do with that from your perspective and what evidence do we consider for that? I asked that of, um, uh, counsel for Mr. Atwood. Um, my understanding of the reading of that, of the claims, the Brady claim and the freestanding innocence claims appear to be the same claim. They, um, I don't see how they differ. And I, I believe, um, Ms. Knight agreed that if, if the Brady claim failed, then the actual innocence failed. So I'm, I'm not, I'm also puzzled by that and I'm not sure how to distinguish the two claims. So, so you're sort of seeing that if in your analysis, um, and I'm not saying the court's analysis, but if, if we were to follow your analysis, if the Brady claim fails for diligence, then there's no new evidence. And that takes care of the actual innocence. Yes, your honor. My question about the, the CI that drew a map to where to find the bones, that is that something it wasn't in the trial. And I know that you cross appealed on that and the Arizona courts never got to it. Is that something that's, uh, that can be considered on actual innocence? Yes, because, um, in an actual innocence claim, uh, the court is, is looking at actual innocence, not, not, not whether evidence was precluded for some reason or another, but, um, actual innocence. And so his confession, this is, this was a confession to, I believe, a cellmate that was suppressed at trial and which included, um, Mr. Atwood describing where, where the body could be found. So that all of that, we also said something about how he hit the bike, um, how he hit the girl on the bike. And then that, I mean, you wanted to get it in to show how the pink got on the bumper. Correct. And also I believe, I believe that the confession included evidence that would have supported the cruelty aggravating factor. And so the state also wanted it in to establish cruelty. But if, but you're saying if we believe that he can't show diligence for the Brady claim, that, that ends the inquiry there and we don't need to consider all other evidence. Correct. Because this court can't, um, can't certify the claim for presentation in a second or successive petition if he hasn't been diligent. So it doesn't need to look at the underlying merits. And that's under, uh, 2244B2Y. Is that correct? B-E-E-2-B-Y is the diligence requirement. Correct. Correct. And then B3C requires a I asked petitioners counsel this also, but I, obviously we don't ask the lawyers to write our opinion. We write our opinion. But if in order your analysis of the case, just take me through from jurisdiction and the claims, how your argument hangs together. What would the court have to find to what, what tethers your argument here? What, what are the findings that the court would make along the way? Um, I don't think the court would need to make an express finding of whether the statute is jurisdictional because I think it could hang its ruling on a finding on, um, on the ineligibility claim, a finding that Atwood has conceded that he can't meet those applies and Sawyer or excuse me, Ramirez now prohibits, especially prohibits the court from applying an equitable exception to avoid EDPA's requirements. And then, um, on the Brady claim, uh, I think the court, I think the court could, could find, should find that Mr. Atwood was not in obtaining the Brady information, the so-called Brady information, because he did nothing for 30 years in any attempt to find the information. And I'd also like to point out that when they go under the covers and decide whether it was material, what's your position on, um, I don't think the court needs to reach that because it, he hasn't passed through the first requirement of to be, um, or B2, excuse me. And, um, so I don't think the court needs to reach that, but if it did, I think it's clear that the, the evidence is not clear and convincing evidence of his innocence. Um, and, and I think that's demonstrated by the, the, um, the gymnastics that Mr. Atwood has to go through to explain the, the, how the, how the memo, um, shows his innocence. He, he claims that. Well, I mean, if, if I could have permission to continue this, um, because I'm taking you over, but, um, in looking at the actual trial, it does appear that Atwood did present evidence that or her son were the actual culprits. So, um, I, I guess the materiality of this would somewhat hinge on whether it prevented that defense. And it didn't correct. And it didn't, and it, it would not have helped the defense either in any material way. Because there was what, what was the evidence that was presented at trial regarding Annette Frese and her son is, was that, was that, I call it the Saudi defense to some other dude did it or whatever that was to what extent was that presented at the trial? There were witnesses who, who saw, um, claimed to see, uh, a woman matching Frese's description with a child matching the victim's description at a local mall, a shopping mall. And, um, but later, uh, the descriptions of the child did not match up to, to the victim in this case, including, you know, the gaps in her teeth, the way she wore her hair, um, her, the clothing she wore. And I summarized that in my, in my response to the motion. Um, and, and to be honest, I'm not sure what other evidence was presented. Um, but, but Mr. Atwood's theory on why this memorandum was, uh, relevant or, or material is that it shows, he claims that it shows that Ms. Frese, um, or her son called, called the tip in and gave the, uh, license plate of the, of the car that belonged to her next door neighbor in order to throw police off her trail. I think that makes a lot of assumptions that might've been argument at trial, but certainly isn't clear and convincing evidence, um, that, that Mr. Atwood didn't commit this crime, especially given the evidence, um, showing the paint transfer, um, from the bike to the car and the nickel transfer from the car to the bike. So, so transfers were both ways, um, indicating that Mr. Atwood's car collided with, uh, the victim's bicycle, um, combined with his, uh, his, uh, murder that he explained away as having killed someone, um, and left leaving the body in the desert. Um, he was also seen in the area and one person was so disturbed by seeing him in his car that, that he wrote down the license plate number and the, the license plate showed that the car belonged to Mr. Atwood. Some teenage boys found Mr., saw Mr. Atwood in his car, um, just a few seconds from the, in the same place where the victim disappeared within a few seconds of that disappearance. So, um, the, the evidence is certainly this memo, um, claiming to see the victim in a car with, with a specific license plate number. It's not clear and convincing evidence that Mr. Atwood did not commit the murder, um, given the evidence of this guilt. Okay. Thank you. Okay. Thank you. Thank you. Any further questions from the panel? Nope. Ms. Knight, uh, you have, uh, two minutes for rebuttal. Thank you very much. And Judge McKeon, your citation that you were looking for, it's the document 1-2 beginning at page 21. That's the state court order. Uh, I quickly want to address this question about materiality of the Brady evidence. Um, the standard is not, does that, uh, memo standing by itself, create clear and clear and convincing evidence of innocence. It's looking at the evidence as a whole, including that new evidence. And the most important function of that evidence is that it creates an independent link of Ms. Fries to the case where most of the other evidence was sightings, where there was people disputing whether it was her or not. She resurfaces in the case independently. Not only is that evidence of her own guilt by trying to mess with the investigation, it also significantly strengthens all the evidence that people thought they saw her. So you have to look at all of that. So, but let me ask you this, just so that I understand in the analysis, hypothetically, if we were to say that you're not diligent, do, does materiality matter? I think that it does because our argument is that we are not going through the statutory, I'm sorry, we are going, I may have misunderstood your question. Were you saying you find we were not diligent? If you're not diligent, can't the inquiry, if the court were to find that there, that you fail on diligence, can the inquiry legally end there? On the Brady claim, it could, because that claim is not going through an equitable exception. Right. On the, on the aggravator claim, we're saying that the diligence requirement does not apply. The diligence response to opposing counsel saying that we've waited 30 years to look through the. We lost you on the end on that. We couldn't hear the last part of your sentence. Okay. I said, what's your response? Can you hear me now? Yes. What's your response to opposing counsel's argument that Mr. Atwood waited 30 years to look in the prosecutor's file, so can the diligence required by 2244B to be. Mr. Atwood made a request for all of the tips that had been received before trial and was told that they were ordered to be disclosed. And he was told that he had been provided to them. So it's not as if he never said, can I see the tips, please? They were given to him and he was entitled to rely on their assurance that they had in fact provided the tips. He is excused from doing anything further. Is that your position? My position is he did do some further attempts at discovery. We don't have a complete log of those right now as there's been a change over counsel, but he, he is not required to just say, you know what? I don't believe what these prosecutors told me when they told me they gave to me. I bet even though they told me that they've given me their whole file, I bet they didn't. And I'm going to go keep looking for it, even though they promised me that they've given it to me. I don't think he's required to do that. And let me just ask one other follow up question. You were saying this new information showed a direct link to an enterprise, but I thought the phone call with the tip was anonymous. So there wasn't a direct link in that you're saying that because the Arizona license plate was belong not to her, but to a next door neighbor, then you had a theory about it. Is that is, was there any other direct link that I missed? No, that's correct. It was her neighbor. It was a neighbor who knew her. And the, we now know the phone call, the false phone call to law enforcement made by the son pretending to be a woman is a the statement you just made. Is there evidence of that? Or is that speculation? There is evidence of that. It is that Todd, the son made the anonymous phone call. What's the evidence of that? There's evidence that he had done that precise thing in another case. Not in this case. There's no evidence. That's right. Thank you. Any further questions? No, then this case will be submitted and we'll try to get you a decision as soon as possible. We know there are a number of other pending matters that are working their way through the district court. And so we may or may not have argument on those, but the briefing I know has been quite complete. And so we thank both counsel for that. It's very helpful to the court. And with that, we're adjourned for the morning. Did you, did you have a question Ms. Knight? Oh, your honor. I just wanted to say that, you know, because there were two cases that came down after we filed our briefing that were relevant, Jones and Ramirez, that if the court were willing to take some very short, very expeditious supplemental briefing on those, we would urge you to consider that. Okay. We'll take that under consideration. And if we need supplemental brief briefing, then we will issue an order to that effect. Thank you. Thank you very much. With that, we're adjourned for the morning. This court for this session stands adjourned.
judges: McKEOWN, CALLAHAN, IKUTA